1

2

3

4

5

6             IN THE UNITED STATES DISTRICT COURT

7                 FOR THE DISTRICT OF ARIZONA

8

9   Michael Devaughn Johnson,              )   CIV-15-1499-PHX-ROS (MHB)
                                           )
10           Petitioner,                    )   **REPORT AND RECOMMENDATION**
                                           )
11   vs.                                    )
                                           )
12   Joseph M. Arpaio, et al.,              )
                                           )
13           Respondents.                   )
                                           )
14

15   TO THE HONORABLE ROSLYN O. SILVER, UNITED STATES DISTRICT COURT:

16           Petitioner Michael Devaughn Johnson, who is confined in the Maricopa County

17   Fourth Avenue Jail, has filed a *pro se* Amended Petition for Writ of Habeas Corpus pursuant

18   to 28 U.S.C. § 2254 (Doc. 5). Respondents filed an Answer, as well as, two pleadings

19   entitled Notice of State Court Ruling which supplement their Answer (Docs. 13, 15, 17).

20   Petitioner then filed his Reply, a motion to strike/dismiss Grounds Two and Three set forth

21   in his habeas petition, and a notice and supplement regarding relevant caselaw (Docs. 14, 16,

22   20).

                           **BACKGROUND**[1]
23

24           On March 29, 2011, the Maricopa County Grand jurors indicted Petitioner on the

25   following charges: Counts 1 and 2, misconduct involving weapons, both class 4 felonies;

26   Count 3, possession of dangerous drugs for sale, a class 2 felony; Count 4, possession for

27

28       [1]   Unless otherwise noted, the following facts are derived from the exhibits submitted
     with Doc. 13 – Respondents' Answer.

1    sale of narcotic drugs, a class 2 felony; and Count 5, possession or use of marijuana, a class

2    6 felony. (Exh. A.) On May 10, 2011, the State filed allegations of prior felony convictions;

3    historical priors; multiple offenses not committed on the same occasion; historical prior

4    convictions upon conviction in a currently pending case; felony committed while on release;

5    and of aggravating circumstances other than prior convictions. (Exh. B.)

6         On November 22, 2011, Petitioner waived counsel and elected to proceed pro per.

7    (Exh. C.) On December 15, 2011, the trial court denied Petitioner's motion to sever the

8    defendants for trial. (Exh. D.) Petitioner also filed pro per pretrial motions for a Franks

9    hearing (Franks v. Delaware, 438 U.S. 154 (1978)) and for a Dessureault hearing (State v.

10   Dessureault, 453 P.2d 951 (Ariz. 1969)). (Exh. E.) The state responded (Exhs. F, G), and

11   following oral argument (Exh. H), the trial court denied both motions (Exh. I). On October

12   24, 2012, upon Petitioner's reconsideration of his decision to self-represent, the trial court

13   withdrew advisory counsel and appointed new defense counsel. (Exh. J.) On January 22,

14   2013, Petitioner asked the trial court to reconsider his motion to sever, and on March 28,

15   2013, the court denied the request. (Exhs. K, L.)

16        At the conclusion of a 13-day trial, the jurors found Petitioner not guilty of Counts 1

17   and 2 and guilty of Counts 3, 4, and 5. (Exhs. M, N.) The jurors further found two

18   aggravating circumstances – the presence of an accomplice and the offenses were committed

19   in expectation of, or in consideration for, pecuniary gain. (Exh. M at 4.) On August 2, 2013,

20   the trial court found the existence of two prior felony convictions: aggravated assault, a class

21   3 felony committed on February 26, 1995, and convicted on June 28, 1996, and forgery, a

22   class 4 felony, committed August 20, 2006, and convicted on May 9, 2007, both in Maricopa

23   County. (Exh. O at 2.) The same day, the trial court sentenced Petitioner to the concurrent

24   presumptive terms of 15.75 years of imprisonment on Counts 3 and 4, and 3.75 years of

25   imprisonment on Count 5. (Exh. P at 2.) Petitioner also received and signed a notice of rights

26   of review. (Exh. R.)

27        On August 10, 2013, Petitioner filed a timely notice of appeal. (Exh. S.) The same

28   day, Petitioner also filed a motion to vacate judgment in the trial court, which the trial court

1   denied on September 13, 2013. (Exhs. T, U.) Meanwhile, Petitioner moved to proceed on

2   appeal pro per. (Exhs. V, W.) Before the court ruled on that motion, counsel filed a motion

3   to reconsider the denial of Petitioner's motion to vacate judgment. (Exh. X.) Petitioner again

4   moved to proceed pro per, and moved to expedite an evidentiary hearing on the motion to

5   vacate. (Exhs. Y, Z, AA.) The trial court set oral argument. (Exh. BB.) The State responded,

6   and Petitioner replied. (Exhs. CC, DD.) Petitioner also filed an "Addendum" to his

7   reconsideration motion and another motion to vacate judgment. (Exhs. EE, FF.) On March

8   7, 2014, the trial court held an evidentiary hearing and took the matter under advisement.

9   (Exh. GG.) Meanwhile, on January 7, 2014, Petitioner filed a notice of post-conviction relief

10  (PCR) alleging newly discovered facts and actual innocence. (Exh. HH at 2.)

11          On March 31, 2014, the trial court ruled, in relevant part:

12          Procedural History

13          Defendant was found guilty at trial of one count of Possession of Dangerous
            Drugs for Sale, a Class 2 Felony; one count of Possession of Narcotic Drugs,
14          a Class 2 Felony; and Possession of Marijuana, a Class 6 Felony. The Court
            found the Defendant had two prior felony convictions. The Court sentenced
15          the Defendant on August 2, 2013, to three concurrent terms of imprisonment
            totaling 15.75 years. This is the Defendant's first Rule 32 proceeding and it
16          has been brought before the Court in an untimely manner. Pursuant to Rule
            32.4(a) of the Arizona Rules of Criminal Procedure, the Notice of
17          Post-Conviction Relief must be filed within 90 days of the entry of judgment
            and sentencing. His Petition was not filed until January 7, 2014.

18          Substantive Claims

19
            The Defendant claims, pursuant to Ariz. R. Crim. P. 32.1(e), that there are
20          newly discovered material facts which probably would have changed the
            verdict or sentence in his case. He filed a Motion to Vacate Judgment on
21          August 10, 2013, six days after he was sentenced, alleging the same newly
            discovered evidence, and which is the subject of ongoing proceedings. This
22          alleged newly discovered evidence was, therefore, known to Petitioner prior
            to the ninety (90) day deadline to file his Petition for Post-Conviction Relief.
23          His Motion is untimely.

24          IT IS THEREFORE ORDERED dismissing Defendant's Notice of
            Post-Conviction Relief.
25
    (Exh. II at 1-2.) On April 4, 2014, the trial court also denied Petitioner's motion to vacate
26
    judgment:
27
            Defendant was found guilty at trial on June 26, 2013 of one count of
28          Possession of Dangerous Drugs for Sale, a class 2 felony, Possession of

1
2
3
4
5

Narcotic Drugs for Sale, a class 2 felony and Possession of Marijuana, a class 6 felony. The State proved he had two prior felony convictions. He was sentenced on August 2, 2013 to the presumptive term of 15.75 years in prison, to run concurrently on the first two counts and 3.75 years concurrently for the Possession of Marijuana. Eight days later, on August 10, 2013 he filed a Motion to Vacate Judgment pursuant to Rule 24.2, Ariz. R. Crim. P., alleging the existence of new material facts. Specifically, he claims he learned the identity of witnesses after trial, whose testimony would have affected the verdict.

6
7
8
9
10

His original Motion to Vacate Judgment did not include sworn affidavits so the Court denied the Motion with leave to re-file. The Defendant then provided affidavits from the alleged witnesses and the Court appointed counsel for the witnesses. Scheduling issues arose, and the evidentiary hearing was rescheduled more than once. The hearing was ultimately held on March 7, 2014. Counsel for the State was given ten days to file a Motion regarding witness Jaquan Porter's gang affiliation, and Defendant was given time to respond. As of today's date, no pleadings have been filed.

11
12
13
14
15
16

At the hearing one witness, Curtis Block, invoked his 5th Amendment privilege against self-incrimination and he refused to testify. Witness, Jaquan Porter, is currently facing separate felony charges and he testified with his assigned counsel present. He testified that he remembered the incident from three (3) years ago. He testified that he was present at the apartment on March 21, 2011, that he was there from 11:00 a.m.-1:00 p.m., that Big J was there wearing a blue tank top and jeans and the Defendant was not there. He testified he volunteered this information to the Defendant when they were housed together in jail in August, 2013. He claimed he only met the Defendant once before March 21, 2011. He also testified that he did not read any police reports about this incident.

17
18
19
20
21

Mr. Porter's testimony is contrary to Officer Huptitch's testimony at trial. During trial Officer Huptitch identified the Defendant was the person who opened the door just past 11:00 a.m. on March 21, 2011. He testified the Defendant was wearing a blue tank top and jeans. He positively identified the Defendant in court. He watched the apartment for about an hour and the Defendant never came back out. The Defendant was arrested at the apartment the next day, March 22, 2011, as the officers served a search warrant on the apartment. The Defendant testified that he was not at the apartment on March 21, 2011. After listening to all the testimony the jury convicted the Defendant.

22
23
24
25

The State argues that this witness is not "newly discovered". The State argues that Jaquan Porter testified the Defendant came to his house on March 22, 2011, the day he was arrested, with Leon Cruz to borrow a bike and Leon Cruz was listed as a Defense witness as early as August 23, 2012, almost one year before trial. Certainly an argument can be made that through counsel the Defendant could have exercised due diligence to contact Leon Cruz and ascertain the name of the resident of the apartment they visited to obtain the bikes.

26
27
28

Even if this witness could be considered "newly discovered," motions for new trial based on newly discovered evidence are disfavored and courts grant them cautiously. *State v. Serna*, 167 Ariz. 373, 807 P.2d 1109 (1991), *cert. denied* 112 S.Ct 214. The Court also notes that in the Notice of Defenses filed May 24, 2011 mistaken identity was not listed, and when the Defense filed a

1   Supplemental List of Witnesses and Defenses on May 3, 2013 only mere
    presence and insufficiency of evidence were listed.

2

3   Assuming this witness could not have been found through the exercise of due
    diligence, the Court finds that Jaquan Porter was not credible. A motion to
    vacate judgment can be denied if the Court finds the proffered witness not
4   credible. *State v. Dunlap*, 187 Ariz. 441, 930 P.2d 518 (App. 1996), *rev.*
    *denied* 117 S.Ct. 24, 56, 520 U.S. 1275, and *State v. Salinas*, 129 Ariz. 364,
5   631 P.2d 519 (1981) ("Further, the witness who is expected to testify must
    appear to the court to be credible. His credibility is to be determined by the
6   judge hearing the motion." 129 Ariz. 364, 368, 631 P.2d 519, 523).

7   For the foregoing reasons,

8   IT IS ORDERED denying the Defendant's Motion to Vacate Judgment.

9   (Exh. JJ at 1-3.) Petitioner followed this with a "separate" notice of appeal from the denial

10  of his motion to vacate judgment. (Exh. KK.) He also filed a "notice of review" from the

11  denial of his PCR notice. (Exh. LL.)[2]

12      On April 21, 2014, Petitioner filed a second notice of PCR, again alleging newly

13  discovered evidence and also that his untimely PCR was not his fault. (Exh. MM.) On April

14  28, 2014, he filed the PCR petition. (Exh. NN.) On May 21, 2014, the trial court again denied

15  relief:

16  The Court has reviewed Defendant's Notice of Post-Conviction Relief filed
    April 21, 2014, and "Petition for P.C.R. by Defendant" filed April 28, 2014.

17

18  Defendant was found guilty at trial of one count of Possession of Dangerous
    Drugs for Sale, a Class 2 Felony; one count of Possession of Narcotic Drugs,
    a Class 2 Felony; and Possession of Marijuana, a Class 6 Felony. The Court
19  found the Defendant had two prior felony convictions. The Court sentenced
    the Defendant on August 2, 2013, to three concurrent terms of imprisonment
20  totaling 15.75 years. This is the Defendant's second Rule 32 proceeding; it is
    both untimely and successive. Defendant's first Rule 32 proceeding was
21  dismissed on March 31, 2014.

22  The defendant claims, pursuant to Ariz. R. Crim. P. 32.1(e), that there are
    newly discovered material facts which probably would have changed the
23  verdict or sentence in her case. To be entitled to post-conviction relief based
    on newly discovered evidence, the defendant must show that the evidence was
24  discovered after trial although existed before trial; the evidence could not have
    been discovered and produced at trial or appeal through reasonable diligence;
25  the evidence is neither solely cumulative nor impeaching; the evidence is

26

27      [2]   In Respondents' first Notice of State Court Ruling (Doc. 15), they demonstrate that
    Division 2 of the Arizona Court of Appeals denied relief and, thus, affirmed the trial court's
28  dismissal of Petitioner's notice of post-conviction relief filed January 7, 2014.

1

2

material; and the evidence probably would have changed the verdict or sentence. *State v. Saenz*, 197 Ariz. 487, 489, ¶ 7, 4 P.3d 1030, 1032 (App. 2000), *see also* Ariz. R. Crim. P. 32.1(e).

3

4

Defendant fails to support this claim. The defendant states he has learned of a new witness. The defendant fails to provide sufficient facts, affidavits, records, or other evidence to support why these facts could not have been produced at the trial phase through reasonable diligence.

5

6

7

A defendant must comply strictly with Rule 32 by asserting substantive grounds which bring him within the provisions of the Rule in order for the Court to grant relief. *State v. Manning*, 143 Ariz. 139, 141, 692 P.2d 318, 320 (1984). Defendant fails to state a claim for which relief can be granted in an untimely Rule 32 proceeding. Rule 32.4(a).

8

(Exh. OO at 1-2.)

9

10

Meanwhile, on April 8, 2014, appellate defense counsel requested that Petitioner be

11

allowed to proceed pro se on appeal. (Exh. PP.) The court of appeals denied this request on

April 17, 2014. (Exh. QQ.)

12

13

On June 19, 2014, Petitioner filed a petition for review from the denial of his second

14

PCR petition. (Exh. RR.)[3] And, on July 14, 2014, he filed an opening brief on direct appeal,

15

raising one issue: whether he was denied his state constitutional right to a 12-person jury

16

where his sentencing exposure was reduced as a matter of law to less than 30 years'

17

imprisonment. (Exh. SS.) The State filed an answering brief on August 25, 2014. (Exh. TT.)

18

On January 13, 2015, the court of appeals dismissed Petitioner's claim, and affirmed his

19

convictions and sentences, concluding, in pertinent part:

20

21

22

23

24

The Arizona Constitution requires a 12-person jury in criminal cases where a sentence of imprisonment for 30 years or more is authorized by law. Ariz. Const. art. II, § 23. Here, Johnson initially faced a sentence of 30 years, and the argument that a 12-person jury was required at all stages of his trial is not without textual foundation. In *Soliz*, however, our supreme court held that although the defendant was exposed to a 35-year sentence, "[his] trial to a eight-person jury removed any risk of his receiving a sentence of thirty years or more," therefore, "no constitutional error occurred." *Soliz*, 223 Ariz. at 119, ¶ 12, 219 P.3d at 1048. The court reasoned that when either the state or the trial court acted explicitly to reduce the defendant's jeopardy before jury

25

26

27

28

3   In Respondents' second Notice of State Court Ruling (Doc. 17), they demonstrate that Division 2 of the Arizona Court of Appeals denied relief and, thus, affirmed the trial court's dismissal of Petitioner's successive notice of post-conviction relief filed April 21, 2014, and successive petition filed on April 28, 2014.

1
2
3

deliberations began, or acted implicitly by failing to request or empanel a jury of 12," a sentence of thirty years or more is no longer permitted and that the twelve-person guarantee of Article 2, Section 23 is not triggered." *Id.* at 120, ¶ 16, 219 P.3d at 1049.

4
5
6

Here, the court acknowledged that it could not impose a sentence longer than 29 years and 364 days, explicitly acting to reduce Johnson's jeopardy before jury deliberations began. Accordingly, Johnson, like Soliz, could not, as a matter of law, receive a sentence of 30 years or more, and Article 2, Section 23, was not triggered. *Id.* at ¶ 18.

7
8

(Exh. UU at 3.) On January 29, 2015, Petitioner filed a petition for review of this decision in the Arizona Supreme Court, and on June 11, 2015, that court denied review. (Exhs. VV, WW.) On July 13, 2015, the court of appeals issued its mandate. (Exh. BBB.)

9
10

During this same time period, on January 20, 2015, Petitioner also moved the trial court to release him, which was declined on January 28, 2015. (Exhs. XX, YY.)

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

On March 11, 2015, Petitioner filed a third PCR notice and petition. (Exhs. ZZ, AAA.) This time, Petitioner raised a claim of insufficiency of the evidence or "failure to acquit," and ineffective assistance of appellate counsel (IAC) for failure to raise this issue. (Exh. AAA at 6-9.) Petitioner also re-argued that the trial court abused its discretion by denying his motion to vacate for newly discovered evidence. (Id. at 10-12.) On July 29, 2015, Petitioner filed a "supplemental" PCR petition, adding an IAC of appellate counsel claim for failure to raise a denial of trial counsel claim at the time of the reduction of the jurors, and he also filed a motion to expedite assignment of the PCR to the trial judge. (Exhs. CCC, DDD.) On July 31, 2015, Petitioner filed a fourth PCR petition, claiming "newly discovered evidence of IAC" for failure to challenge Petitioner's arrest. (Exh. DDD at 2, 6.) On August 25, 2015, Petitioner filed an "addendum motion" to his PCR petition, reiterating previously made arguments. (Exh. EEE.) He also moved to consolidate his third and fourth PCR proceedings. (Exh. FFF.) On October 30, 2015, the trial court consolidated Petitioner's third and fourth PCR petitions, together with the notices, supplements and addenda, and ordered the State to respond by December 14, 2015. (Exh. GGG.) According to Respondents, these PCR proceedings remain pending.

28

1        In his Amended Petition for Writ of Habeas Corpus, Petitioner raises three grounds

2   for relief: (1) Petitioner was denied a fair trial due to the number of jurors, in violation of his

3   Sixth Amendment rights; (2) newly discovered evidence shows that Petitioner is actually

4   innocent; and (3) Petitioner was arrested without probable cause in violation of the Fourth

5   Amendment.

6        Respondents subsequently filed their Answer contending that Ground One is

7   procedurally defaulted. Regarding Ground Two, Respondents state that Petitioner's "separate

8   notice of appeal" from the denial of his motion to vacate judgment – which raised the instant

9   claim alleged in Ground Two – is still pending in state court. (Exhs. JJ, KK.) As to Ground

10  Three, Respondents assert that this claim also remains pending in state court as part of the

11  consolidated PCR proceedings. (Exhs. ZZ, AAA, CCC, EEE, FFF, GGG.) Thus,

12  Respondents argue that Grounds Two and Three are not properly exhausted.

13       Petitioner filed a Reply to Respondents' Answer. (Doc. 14.) In his pleading, Petitioner

14  only addresses Ground One, and moves to voluntarily dismiss (or strike) Grounds Two and

15  Three. Petitioner also filed a separate pleading requesting to voluntarily dismiss (or strike)

16  Grounds Two and Three, and proceed with Ground One. (Doc. 16.)

17                              **DISCUSSION**

18       In their Answer, Respondents contend that Ground One is procedurally defaulted.

19  And, based on the procedural status of Grounds Two and Three, Respondents request that

20  the amended habeas petition should be denied and dismissed with prejudice.

21  **A.    Ground One - Exhaustion and Procedural Default**

22       A state prisoner must exhaust his remedies in state court before petitioning for a writ

23  of habeas corpus in federal court. See 28 U.S.C. § 2254(b)(1) and (c); Duncan v. Henry, 513

24  U.S. 364, 365-66 (1995); McQueary v. Blodgett, 924 F.2d 829, 833 (9th Cir. 1991). To

25  properly exhaust state remedies, a petitioner must fairly present his claims to the state's

26  highest court in a procedurally appropriate manner. See O'Sullivan v. Boerckel, 526 U.S.

27  838, 839-46 (1999). In Arizona, a petitioner must fairly present his claims to the Arizona

28  Court of Appeals by properly pursuing them through the state's direct appeal process or

1   through appropriate post-conviction relief. See Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th

2   Cir. 1999); Roettgen v. Copeland, 33 F.3d 36, 38 (9th Cir. 1994).

3        Proper exhaustion requires a petitioner to have "fairly presented" to the state courts

4   the exact federal claim he raises on habeas by describing the operative facts and federal legal

5   theory upon which the claim is based. See, e.g., Picard v. Connor, 404 U.S. 270, 275-78

6   (1971) ("[W]e have required a state prisoner to present the state courts with the same claim

7   he urges upon the federal courts."). A claim is only "fairly presented" to the state courts

8   when a petitioner has "alert[ed] the state courts to the fact that [he] was asserting a claim

9   under the United States Constitution." Shumway v. Payne, 223 F.3d 982, 987 (9th Cir. 2000)

10  (quotations omitted); see Johnson v. Zenon, 88 F.3d 828, 830 (9th Cir. 1996) ("If a petitioner

11  fails to alert the state court to the fact that he is raising a federal constitutional claim, his

12  federal claim is unexhausted regardless of its similarity to the issues raised in state court.").

13       A "general appeal to a constitutional guarantee," such as due process, is insufficient

14  to achieve fair presentation. Shumway, 223 F.3d at 987 (quoting Gray v. Netherland, 518

15  U.S. 152, 163 (1996)); see Castillo v. McFadden, 399 F.3d 993, 1003 (9th Cir. 2005)

16  ("Exhaustion demands more than drive-by citation, detached from any articulation of an

17  underlying federal legal theory."). Similarly, a federal claim is not exhausted merely because

18  its factual basis was presented to the state courts on state law grounds – a "mere similarity

19  between a claim of state and federal error is insufficient to establish exhaustion." Shumway,

20  223 F.3d at 988 (quotations omitted); see Picard, 404 U.S. at 275-77.

21       Even when a claim's federal basis is "self-evident," or the claim would have been

22  decided on the same considerations under state or federal law, a petitioner must still present

23  the federal claim to the state courts explicitly, "either by citing federal law or the decisions

24  of federal courts." Lyons v. Crawford, 232 F.3d 666, 668 (9th Cir. 2000) (quotations omitted),

25  amended by 247 F.3d 904 (9th Cir. 2001); see Baldwin v. Reese, 541 U.S. 27, 32 (2004)

26  (claim not fairly presented when state court "must read beyond a petition or a brief ... that

27  does not alert it to the presence of a federal claim" to discover implicit federal claim).

28

- 9 -

1    Additionally, under the independent state grounds principle, a federal habeas court

2  generally may not review a claim if the state court's denial of relief rests upon an

3  independent and adequate state ground. See Coleman v. Thompson, 501 U.S. 722, 731-32

4  (1991). The United States Supreme Court has explained:

5       In the habeas context, the application of the independent and adequate state
        ground doctrine is grounded in concerns of comity and federalism. Without the
6       rule, a federal district court would be able to do in habeas what this Court
        could not do on direct review; habeas would offer state prisoners whose
7       custody was supported by independent and adequate state grounds an end run
        around the limits of this Court's jurisdiction and a means to undermine the
8       State's interest in enforcing its laws.

9  Id. at 730-31. A petitioner who fails to follow a state's procedural requirements for

10  presenting a valid claim deprives the state court of an opportunity to address the claim in

11  much the same manner as a petitioner who fails to exhaust his state remedies. Thus, in order

12  to prevent a petitioner from subverting the exhaustion requirement by failing to follow state

13  procedures, a claim not presented to the state courts in a procedurally correct manner is

14  deemed procedurally defaulted, and is generally barred from habeas relief. See Id. at 731-32.

15    Claims may be procedurally barred from federal habeas review based upon a variety

16  of factual circumstances. If a state court expressly applied a procedural bar when a petitioner

17  attempted to raise the claim in state court, and that state procedural bar is both

18  "independent"[4] and "adequate"[5] – review of the merits of the claim by a federal habeas court

19  is barred. See Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991) ("When a state-law default

20  prevents the state court from reaching the merits of a federal claim, that claim can ordinarily

21  not be reviewed in federal court.") (citing Wainwright v. Sykes, 433 U.S. 72, 87-88 (1977)

22  and Murray v. Carrier, 477 U.S. 478, 485-492 (1986)).

23

24  _____

25    [4]  A state procedural default rule is "independent" if it does not depend upon a federal
     constitutional ruling on the merits. See Stewart v. Smith, 536 U.S. 856, 860 (2002).
26

27    [5]  A state procedural default rule is "adequate" if it is "strictly or regularly followed."
     Johnson v. Mississippi, 486 U.S. 578, 587 (1988) (quoting Hathorn v. Lovorn, 457 U.S. 255,
28  262-53 (1982)).

1        Moreover, if a state court applies a procedural bar, but goes on to alternatively address

2  the merits of the federal claim, the claim is still barred from federal review. See Harris v.

3  Reed, 489 U.S. 255, 264 n.10 (1989) ("[A] state court need not fear reaching the merits of

4  a federal claim in an *alternative* holding. By its very definition, the adequate and independent

5  state ground doctrine requires the federal court to honor a state holding that is a sufficient

6  basis for the state court's judgment, even when the state court also relies on federal law. ...

7  In this way, a state court may reach a federal question without sacrificing its interests in

8  finality, federalism, and comity.") (citations omitted); Bennett v. Mueller, 322 F.3d 573, 580

9  (9th Cir. 2003) ("A state court's application of a procedural rule is not undermined where, as

10  here, the state court simultaneously rejects the merits of the claim.") (citing Harris, 489 U.S.

11  at 264 n.10).

12        A procedural bar may also be applied to unexhausted claims where state procedural

13  rules make a return to state court futile. See Coleman, 501 U.S. at 735 n.1 (claims are barred

14  from habeas review when not first raised before state courts and those courts "would now

15  find the claims procedurally barred"); Franklin v. Johnson, 290 F.3d 1223, 1230-31 (9th Cir.

16  2002) ("[T]he procedural default rule barring consideration of a federal claim 'applies only

17  when a state court has been presented with the federal claim,' but declined to reach the issue

18  for procedural reasons, or 'if it is clear that the state court would hold the claim procedurally

19  barred.'") (quoting Harris, 489 U.S. at 263 n.9).

20        In Arizona, claims not previously presented to the state courts via either direct appeal

21  or collateral review are generally barred from federal review because an attempt to return to

22  state court to present them is futile unless the claims fit in a narrow category of claims for

23  which a successive petition is permitted. See Ariz. R. Crim. P. 32.1(d)-(h), 32.2(a)

24  (precluding claims not raised on appeal or in prior petitions for post-conviction relief),

25  32.4(a) (time bar), 32.9(c) (petition for review must be filed within thirty days of trial court's

26  decision). Arizona courts have consistently applied Arizona's procedural rules to bar further

27  review of claims that were not raised on direct appeal or in prior Rule 32 post-conviction

28  proceedings. See, e.g., Stewart, 536 U.S. at 860 (determinations made under Arizona's

1  procedural default rule are "independent" of federal law); Smith v. Stewart, 241 F.3d 1191,

2  1195 n.2 (9th Cir. 2001) ("We have held that Arizona's procedural default rule is regularly

3  followed ["adequate"] in several cases.") (citations omitted), reversed on other grounds,

4  Stewart v. Smith, 536 U.S. 856 (2002); see also Ortiz v. Stewart, 149 F.3d 923, 931-32

5  (rejecting argument that Arizona courts have not "strictly or regularly followed" Rule 32 of

6  the Arizona Rules of Criminal Procedure); State v. Mata, 185 Ariz. 319, 334-36, 916 P.2d

7  1035, 1050-52 (Ariz. 1996) (waiver and preclusion rules strictly applied in post-conviction

8  proceedings).

9       The federal court will not consider the merits of a procedurally defaulted claim unless

10  a petitioner can demonstrate that a miscarriage of justice would result, or establish cause for

11  his noncompliance and actual prejudice. See Schlup, 513 U.S. at 321; Coleman, 501 U.S. at

12  750-51; Murray, 477 U.S. at 495-96. Pursuant to the "cause and prejudice" test, a petitioner

13  must point to some external cause that prevented him from following the procedural rules of

14  the state court and fairly presenting his claim. "A showing of cause must ordinarily turn on

15  whether the prisoner can show that some objective factor external to the defense impeded

16  [the prisoner's] efforts to comply with the State's procedural rule. Thus, cause is an external

17  impediment such as government interference or reasonable unavailability of a claim's factual

18  basis." Robinson v. Ignacio, 360 F.3d 1044, 1052 (9th Cir. 2004) (citations and internal

19  quotations omitted). Ignorance of the State's procedural rules or other forms of general

20  inadvertence or lack of legal training and a petitioner's mental condition do not constitute

21  legally cognizable "cause" for a petitioner's failure to fairly present his claim. Regarding the

22  "miscarriage of justice," the Supreme Court has made clear that a fundamental miscarriage

23  of justice exists when a Constitutional violation has resulted in the conviction of one who is

24  actually innocent. See Murray, 477 U.S. at 495-96.

25       In Ground One, Petitioner alleges a violation of due process for the use of eight, rather

26  than twelve, jurors at his trial. The Court finds that Petitioner failed to fairly present this

27  specific federal claim on direct appeal. (Exhs. SS, TT, UU, VV, WW.) Specifically, in his

28  opening brief on direct appeal, Petitioner raised the following issue: "Whether it was

- 12 -

1  structural error, or in the alternative, fundamental error, for Appellant's eight-member jury

2  to consider his offenses when the seriousness of his offenses ... ." Petitioner argued that the

3  "Arizona Constitution demanded that based on the seriousness of Appellant's charges, his

4  case be submitted to a twelve-member jury. Ariz.Const., Art. II, sec. 23."

5        The Arizona Court of Appeals denied this claim on state law grounds, concluding, in

6  pertinent part:

7        The Arizona Constitution requires a 12-person jury in criminal cases where a
        sentence of imprisonment for 30 years or more is authorized by law. Ariz.
8        Const. art. II, § 23. Here, Johnson initially faced a sentence of 30 years, and
        the argument that a 12-person jury was required at all stages of his trial is not
9        without textual foundation. In *Soliz*, however, our supreme court held that
        although the defendant was exposed to a 35-year sentence, "[his] trial to a
10       eight-person jury removed any risk of his receiving a sentence of thirty years
        or more," therefore, "no constitutional error occurred." *Soliz*, 223 Ariz. at 119,
11       ¶ 12, 219 P.3d at 1048. The court reasoned that when either the state or the
        trial court acted explicitly to reduce the defendant's jeopardy before jury
12       deliberations began, or acted implicitly by failing to request or empanel a jury
        of 12," a sentence of thirty years or more is no longer permitted and that the
13       twelve-person guarantee of Article 2, Section 23 is not triggered." *Id.* at 120,
        ¶ 16, 219 P.3d at 1049.
14
        Here, the court acknowledged that it could not impose a sentence longer than
15       29 years and 364 days, explicitly acting to reduce Johnson's jeopardy before
        jury deliberations began. Accordingly, Johnson, like Soliz, could not, as a
16       matter of law, receive a sentence of 30 years or more, and Article 2, Section
        23, was not triggered. *Id.* at ¶ 18.
17
   (Exh. UU at 3.) The Arizona Supreme Court denied review thereafter. (Exh. WW.)
18
        Thus, the record reflects that Petitioner failed to raise the claim alleged in Ground One
19
   as a federal constitutional claim on direct appeal – and the state courts did not address it as
20
   one. As the Court has previously explained, a claim has been "fairly presented" if the
21
   petitioner has described the operative facts and legal theories on which the claim is based.
22
   See Picard, 404 U.S. at 277-278. A state prisoner has not fairly presented federal claims in
23
   state court unless he specifically indicated to that court that the claims were based on federal
24
   law. See, e.g., Lyons, 232 F.3d at 669-70 (general reference to insufficiency of evidence,
25
   right to be tried by impartial jury and ineffective assistance of counsel lacked the specificity
26
   and explicitness required to present federal claim); Shumway, 223 F.3d at 987-88 (broad
27
   reference to "due process" insufficient to present federal claim); see also Hiivala v. Wood,
28

1   195 F.3d 1098, 1106 (9ᵗʰ Cir. 1999) ("The mere similarity between a claim of state and

2   federal error is insufficient to establish exhaustion."). A petitioner must make the federal

3   basis of a claim explicit by citing specific provisions of federal statutory or case law, even

4   if the federal basis of a claim is "self-evident," Gatlin v. Madding, 189 F.3d 882, 888 (9ᵗʰ Cir.

5   1999), or by citing state cases that explicitly analyze the same federal constitutional claim,

6   Peterson v. Lampert, 319 F.3d 1153, 1158 (9ᵗʰ Cir. 2003); Castillo, 399 F.3d at 1002-03

7   ("Exhaustion demands more than drive-by citation, detached from any articulation of an

8   underlying federal theory."). Besides citing relevant statutory or case law, Petitioner must

9   describe "both the operative facts and the federal legal theory on which his claim is based"

10   so that the state courts have a fair opportunity to apply controlling legal principles to those

11   facts. Kelly v. Small, 315 F.3d 1063, 1066 (9ᵗʰ Cir. 2003). The operative facts must be

12   presented in the appropriate context to satisfy the exhaustion requirement. The fair

13   presentation requirement is not satisfied, for example, when a claim is presented in state

14   court in a procedural context in which its merits will not be considered in the absence of

15   special circumstances. See Castille v. Peoples, 489 U.S. 346, 351 (1989).

16      Therefore, Petitioner did not fairly present Ground One. Failure to fairly present

17   Ground One has resulted in procedural default because Petitioner is now barred from

18   returning to state courts. See Ariz. R. Crim. P. 32.2(a), 32.4(a). Petitioner has also not argued

19   or established grounds to excuse the procedural default by a showing of cause and prejudice,

20   and he has not argued a fundamental miscarriage of justice. And, ignorance of the State's

21   procedural rules or other forms of general inadvertence or lack of legal training and a

22   petitioner's mental condition do not constitute legally cognizable "cause" for a petitioner's

23   failure to fairly present his claim.

24   **B.    Grounds Two and Three**

25      In Ground Two, Petitioner states a claim of newly discovered evidence "based on a

26   new witness Jaquan Porter" allegedly demonstrating that Petitioner is actually innocent.

27   According to the record, Petitioner raised this issue in his motion to vacate judgment, which

28   was dismissed on the merits by the trial court on April 2, 2014, following an evidentiary

- 14 -

1   hearing. (Doc. 5 at 7; Exh. JJ.) Specifically, the trial court found, that even assuming this

2   witness is "newly discovered," meaning he could not be found at the time of trial through the

3   exercise of due diligence, his testimony was not credible. (Exh. JJ at 2-3.) Thereafter,

4   Petitioner filed a "separate notice of appeal" from the denial of his motion to vacate

5   judgment. (Exh. KK.) The documents in the record demonstrate that this "separate notice of

6   appeal" remains pending. The Court notes that Petitioner also raised this same newly

7   discovered evidence claim in his consolidated third and fourth PCR proceedings – which

8   remain pending in state court as well. (Exhs. ZZ, AAA, CCC, EEE, FFF, GGG.)

9          In Ground Three, Petitioner claims that he was arrested without probable cause in

10  violation of the Fourth Amendment. Petitioner raised the claim alleged in Ground Three as

11  part of the consolidated PCR proceedings, which remain pending in state court. (Exhs. Z,

12  AAA, CCC, EEE, FFF, GGG.)

13         Petitioner filed a Reply to Respondents' Answer (Doc. 14), and a separate pleading

14  entitled, "motion to strik[e] claims two and three and proceed with claim one" (Doc. 16). In

15  both pleadings, Petitioner, citing Rhines v. Weber, 544 U.S. 269 (2005), requests that the

16  Court dismiss (or "strik[e]") Grounds Two and Three. Petitioner requests that the Court

17  proceed with Ground One. Petitioner has also filed two motions for the Court to expedite its

18  ruling on his amended habeas petition stating, "Petitioner will not be raising claims two or

19  three 'ever' again," and "Petitioner does not intend to re-raise claims two and three ...

20  therefore, [there] is no reason for this court to wait." (Docs. 18, 19.)

21         Having reviewed Petitioner's submissions coupled with the current procedural status

22  of Grounds Two and Three, the Court will recommend that Petitioner's pleading entitled

23  "motion to strik[e] claims two and three and proceed with claim one" (Doc. 16) be granted.

**CONCLUSION**

25         Finding that Ground One is procedurally defaulted, and Petitioner having requested

26  that Grounds Two and Three be dismissed or stricken from his amended habeas petition, the

27  Court will recommend that Petitioner's Petition for Writ of Habeas Corpus be denied and

28  dismissed with prejudice.

1    **IT IS THEREFORE RECOMMENDED** that Petitioner's pleading entitled "motion

2    to strik[e] claims two and three and proceed with claim one" (Doc. 16) be **GRANTED**;

3    **IT IS FURTHER RECOMMENDED** that Petitioner's Amended Petition for Writ

4    of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 5) be **DENIED** and **DISMISSED**

5    **WITH PREJUDICE**;

6    **IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave

7    to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Petition is

8    justified by a plain procedural bar and jurists of reason would not find the procedural ruling

9    debatable.

10   This recommendation is not an order that is immediately appealable to the Ninth

11   Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

12   Appellate Procedure, should not be filed until entry of the district court's judgment. The

13   parties shall have fourteen days from the date of service of a copy of this recommendation

14   within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1);

15   Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen

16   days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of

17   Civil Procedure for the United States District Court for the District of Arizona, objections

18   to the Report and Recommendation may not exceed seventeen (17) pages in length. Failure

19   timely to file objections to the Magistrate Judge's Report and Recommendation may result

20   in the acceptance of the Report and Recommendation by the district court without further

21   review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure

22   timely to file objections to any factual determinations of the Magistrate Judge will be

23   considered a waiver of a party's right to appellate review of the findings of fact in an order

24   or judgment entered pursuant to the Magistrate Judge's recommendation. See Rule 72,

25   Federal Rules of Civil Procedure.

26   DATED this 17th day of August, 2016.

27

28

Michelle H. Burns
United States Magistrate Judge